

ENTERED
06/27/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| IFS FINANCIAL CORPORATION § | CASE NO: 02-39553 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| JOSEPH D MARTINEC § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 17-03042 | |
| § | | |
| W. STEVE SMITH, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

W. Steve Smith was appointed to serve as the Chapter 7 Trustee in IFS Financial's bankruptcy case. (ECF No. 77 at 3). Consistent with his statutory duties as a trustee, Smith procured a bond pursuant to 11 U.S.C. § 322(a). (ECF No. 77 at 3). Hartford Casualty Insurance Company served as surety for this bond. (ECF No. 77 at 6). The Court removed Smith as Trustee on May 10, 2013. Joseph D. Martinec ultimately became the successor Chapter 7 Trustee. (ECF No. 77 at 4).

Martinec filed a motion for summary judgment to determine the amount of coverage Hartford's bonds provide. (*See* ECF No. 77). Martinec alleges that once Smith was removed as Trustee in 2013, the bond issued in that year dictates the limit of Hartford's liability, which has only a single aggregate limit across all named trustees of $44,400,000.00. (ECF No. 77 at 3). Hartford responds that the 2013 bond contains a $5,000,000.00 per case limit. (ECF No. 93 at 2).

Martinec's motion for summary judgment is granted in part and denied in part. The extent of Hartford's liability under these bonds is determined on a year by year basis depending

on when breaches by Smith occurred. No per case limit exists under Endorsement B of the 2013 bond.

## Background

In 2002, W. Steve Smith was appointed the Chapter 7 Trustee in the IFS Financial bankruptcy case. (ECF No. 77 at 3). The Bankruptcy Code requires that trustees file a bond with the bankruptcy court to insure the full performance of their official duties. 11 U.S.C. § 322(a). Smith obtained such a bond which was originally issued by Fireman's Fund and was eventually assumed by Hartford Casualty Insurance Company in 2004. (ECF No. 77 at 6). Smith served as Trustee in the IFS Financial case for the next eleven years until the Court removed Smith for cause on May 10, 2013.[1] (ECF No. 77 at 3).

Smith appealed his removal first to the District Court and then to the Fifth Circuit, both of which affirmed this Court's ruling. (ECF No. 77 at 4). Joseph D. Martinec ultimately replaced Smith as the Chapter 7 Trustee on August 29, 2016. (*See* Case No. 02-39553; ECF No. 1332). Martinec initiated this adversary proceeding against Smith, alleging that Smith breached his fiduciary duties as trustee and is liable for negligence, disallowance of fee applications, and disgorgement of profits. (ECF No. 1 at 18–20). Martinec also alleges that, as the surety on Smith's bond, Hartford is liable for Smith's alleged failure to perform his official duties as trustee and provide an accounting of the estate's assets. (ECF No. 1 at 21).

Martinec filed a motion for summary judgment, seeking to determine the potential liability Hartford may bear on the bond. (See ECF No. 77). Martinec claims that the bond Hartford issued in 2013 that was in effect at the time of Smith's removal determines the amount of coverage available under the bond. (ECF No. 77 at 2). According to Martinec, the 2013 bond

---

[1] The events leading to Smith's removal are described in *In re IFS Fin. Corp.*, 803 F.3d 195 (5th Cir. 2015).

had no single case limit on liability and contained only an aggregate limit of $44,400,000.00. Martinec alleges that the full $44,000,000.00 is available to compensate for Smith's potential liability in this adversary proceeding. (ECF No. 77 at 9).

Hartford opposes Martinec's summary judgment motion, arguing that the terms of the 2013 bond contained a limitation of liability from previous years which at least creates a genuine issue of material fact regarding the amount of liability under the bonds. (ECF No. 93 at 12).

On May 18, 2018, the Court held a hearing on Martinec's motion for summary judgment and took the matter under advisement.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence to support an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Florida Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the

initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact. If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

Bankruptcy trustees act to "assure that all creditors are treated equally" in bankruptcy proceedings. *In re Russo*, 18 B.R. 257, 271 (Bankr. E.D.N.Y. 1982). To secure the faithful performance of trustee's duties, the Bankruptcy Code requires that trustees obtain surety bonds in the name of the United States. 11 U.S.C. § 322(a); *In re Schooler*, 725 F.3d. 498, 506 (5th Cir. 2013). The statute also imposes liability under the bond in situations where the trustee fails

to properly execute his official duties. *Schooler*, 725 F.3d at 506 (holding that § 322(c) implies trustees are liable both personally and through their statutory bonds). While the Bankruptcy Code delineates the requirements of the trustee's bond, "the terms of the bonds themselves are also integral to understanding liability issues." *Id*. at 507.

*Retroactive Liability Under Hartford's Bonds*

Hartford and its predecessors as surety issued statutory bonds to Smith on a yearly basis while he served as the Chapter 7 Trustee. The terms of the bonds are summarized in a table below. From 2001 to 2012, each bond contained a per case limit on each trustee's liability ranging from $1,000,000.00 to $5,000,000.00 as well as an aggregate limit for all the trustees the bond covered. (*See* ECF No. 77-4 1–44). However, prior to the time that Smith was removed as Trustee in May of 2013, Hartford issued Bond No. 61BSBGC8158 (the "'158 Bond") with Endorsement B. (ECF No. 77 at 9). Endorsement B stated that the liability for trustees covered under the bond "is effective from 10/01/2012 to 10/01/2013" and "the aggregate limit of the bond is [$44,400,000.00]." (ECF No. 77-4 at 47). No explicit per case limit on liability was mentioned in Endorsement B. (ECF No. 77-4 at 47).

| Coverage Period | Limit Per Case | Aggregate Limit | Smith's Individual Limit |
|---|---|---|---|
| 10/01-10/02 | $ 3,000,000.00 | $ 47,935,000.00 | $ 4,500,000.00 |
| 10/02-10-03 | $ 1,000,000.00 | $ 48,786,000.00 | $ 4,200,000.00 |
| 10/03-10/04 | $ 1,000,000.00 | $ 50,850,000.00 | $ 5,890,000.00 |
| 10/04-10/05 | $ 1,000,000.00 | $ 51,361,000.00 | $ 5,889,000.00 |
| 10/05-10/06 | $ 1,000,000.00 | $ 54,108,000.00 | $ 6,000,000.00 |
| 10/06-10/07 | $ 1,000,000.00 | $ 62,742,103.00 | $ 6,896,000.00 |
| 10/07-10/08 | $ 1,000,000.00 | $ 59,215,580.00 | $ 7,223,000.00 |
| 10/08-10/09 | $ 1,000,000.00 | $ 64,181,000.00 | $ 5,868,000.00 |
| 10/09-10/10 | $ 1,000,000.00 | $ 61,519,000.00 | $ 3,637,000.00 |
| 10/10-10/11 | $ 1,000,000.00 | $ 55,748,000.00 | $ 3,477,000.00 |
| 10/11-10/12 | $ 5,000,000.00 | | $ 5,000,000.00 |
| 10/12-10/13 | | $ 44,400,000.00 | |

Martinec purports that terms of Endorsement B, effective at the time of Smith's removal, require that the entire amount of the bond $44,400,000.00 is available to satisfy Smith's liability under the bond.  (ECF No. 77 at 9).  He further argues that the bond retroactively applies to breaches which occurred before Hartford issued Endorsement B.  (ECF No. 77 at 12).  In support of this argument, Martinec cites to a series of cases which involve the retroactive liability of sureties for defalcations ranging from embezzlement to a failure to account for estate property.  (ECF No. 77 at 10–12).

Hartford responds that the '158 Bond contained a $5,000,000.00 per case limit when it was first issued in 2011 which was incorporated into Endorsement B after it was enacted in 2012.  (ECF No. 93 at 11–12).  Hartford argues that without an explicit removal of the per case limit, the intent of the parties dictates that the individual case limit must be read into each successive Endorsement.  (ECF No. 93 at 12).

In this case, it is the terms of the bonds themselves which dictate the amount of liability borne under the bonds.  *Schooler*, 725 F.3d at 507.  The bonds state that the Trustee:

> Shall faithfully and truly account for all moneys, assets, and effects of the estate operated by the commencement of each case in which he or she has been appointed or will be appointed, and shall in all respects faithfully perform all his or her official duties as Trustee. . . .  This bond shall remain in full force and effect with respect to all cases pending in this Court, in which [the Trustee has] been appointed."  (ECF No. 74-4 at 3).  Each bond issued while Smith was Trustee contained identical language, including the '158 Bond.

(*See* ECF No. 74-4).  The plain language of the bonds imposes two duties on the trustee: (i) account for all assets of the estate, and (ii) carry out all official duties as trustee.  It also states that Hartford's liability under the bond remains in effect as long as the case remains pending with the bankruptcy court.

Under the bond, Hartford's liability may be invoked in two ways. The Trustee has certain duties to the estate which are carried out within a specific time frame. For example, if the statute of limitation on the filing of a lawsuit arose on December 31, 2014, the Trustee's liability for failure to file a lawsuit would stop accruing on December 31, 2014. A 2015 bond would not cover a 2014 defalcation. Such a duty would either be performed in that time frame or not at all. As a result, if a trustee breached this duty, liability under the bond could only be incurred for the year in which the breach occurred. Alternatively, trustees also have continuing duties to the estate, such as a duty to account for all estate property. § 704(a)(2). A duty such as this may span over multiple years. A breach of a duty to account for funds received by the Trustee could lead to liability under the bond which spans multiple years.

Martinec proposes that Endorsement B of the '158 Bond may retroactively apply liability to events which occurred prior to the issuance of the '158 Bond. (ECF No. 77 at 12). However, the terms of the bonds themselves preclude this reasoning. The Trustee's liability under Hartford's bonds is limited to the year in which the breach of conditions occurred, unless a continuing duty of the Trustee is invoked which may incur multiple years of liability.

*Endorsement B Single Case Limitation*

The second issue the parties dispute is whether or not a single case limitation exists for Endorsement B of the '158 Bond. Martinec argues that the plain language of Endorsement B controls and imposes only an aggregate limit of $44,400,000.00 without a single case limit. (ECF No. 77 at 13). Hartford disputes this and claims Endorsement B is ambiguous, requiring the Court to consider the intent of the parties while interpreting. (ECF No. 93 at 12–14).

Endorsement A was incorporated into the '158 Bond, lists the named principals under the bond, and specifically includes that the "Per Case Limit of Liability shall be limited to five-

million dollars ($5,000,000.00)." (ECF No. 77-4 at 44). It states that Endorsement A is only effective from October 1, 2011 through October 1, 2012. (ECF No. 77-4 at 44).

Endorsement B states that it is incorporated into the '158 Bond, with effective dates from October 1, 2012 to October 1, 2013, and that the "aggregate limit of the bond is $44,400,000.00 Dollars." (ECF No. 77-4 at 47). Notably absent in Endorsement B is any mention of a single case limit or the incorporation of the terms of Endorsement A. Additionally, the '158 Bond itself fails to impose a per case limit or state that terms of prior Endorsements are effective after their expiration.

When interpreting a contract, the terms used "are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (quoting *Am. Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001)). On its face, the '158 Bond and its Endorsements are unambiguous. Endorsement A was only effective from October 2011 to October 2012. Endorsement B became effective in October 2012 for the following year, and applies an aggregate limit across all trustees but fails to impose any per case limit.

Hartford argues that the intent of the parties controls and that without language that explicitly removes the per case limit from Endorsement A, it should carry forward. (ECF No. 93 at 13). However, this argument is contradicted by the plain language of the Endorsements. Endorsement A states that it was only effective from October 1, 2011 to October 1, 2012. (ECF No. 74-4 at 44). No language implies that the parties intended Endorsement A to carry forward beyond its expiration on October 1, 2012. Nor does Endorsement B reference any part of Endorsement A or suggest that the two were meant to work in unison. (See ECF no. 77-4 at 47).

As a result, the plain text of Endorsement B controls and no per case limitation exists on Endorsement B of the '158 Bond.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **June 24, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE